# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

PATRICK BOLES,
    Petitioner,

Case No. 1:14-cv-903

vs.

Beckwith, J.
Litkovitz, M.J.

WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
    Respondent.

**ORDER AND REPORT
AND RECOMMENDATION**

Petitioner, a prisoner at the Chillicothe Correctional Institution in Chillicothe, Ohio, has

filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 with the assistance of

counsel.  This matter is before the Court on respondent's motion to dismiss the petition on

exhaustion grounds and petitioner's response to that motion, which includes a motion to stay and

hold the petition in abeyance.  (Docs. 8, 9).  Respondent has filed a responsive pleading opposing

petitioner's motion for stay.  (Doc. 11).

## I. PROCEDURAL BACKGROUND

### State Trial Proceeding

In July 2011, the Brown County, Ohio, grand jury returned an indictment charging

petitioner with eight counts of rape in violation of Ohio Rev. Code  § 2907.02(A)(1)(b). (*See*

Doc. 7, Ex. 1).  The charges stemmed from separate instances of sexual conduct involving

fellatio, cunnilingus, digital penetration and vaginal intercourse with a minor, the petitioner's

niece. The offenses charged in Counts One through Four allegedly occurred between April 1,

1991 and December 31, 1991, and the offenses charged in Counts Five through Eight allegedly

occurred between January 1, 1992 and July 22, 1992. (*See id.*).

Following the resolution of issues raised by the State and defense counsel in numerous pretrial motions (*see id.*, Exs. 3-22), the matter proceeded to trial before a jury, which found petitioner guilty of the rape offenses occurring in 1991 as charged in Counts One through Four of the indictment. (*Id.*, Ex. 23). The jury acquitted petitioner of the rape offenses occurring in 1992 as charged in Counts Five through Eight. (*See id.*). On June 25, 2012, the trial court issued a judgment entry sentencing petitioner to an aggregate term of imprisonment of fifteen (15) to seventy-five (75) years, which consisted of consecutive prison terms of five (5) to twenty-five (25) years for the rape offenses charged in Counts One through Three of the indictment.[1] (*Id.*, Ex. 26).[2] The trial court also issued a separate entry classifying petitioner as a "sexually oriented offender as that term was defined and existed prior to January 1, 2008" and ordering petitioner to "comply with the reporting requirements in effect prior to January 1, 2008" as set forth in Ohio Rev. Code Chapter 2950. (*Id.*, Ex. 27).

## State Appeal Proceedings

With the assistance of his trial counsel, petitioner filed a timely notice of appeal to the Ohio Court of Appeals, Twelfth Appellate District. (Doc. 7, Ex. 29). With the assistance of new counsel for appeal purposes, petitioner filed an appellate brief raising the following assignments of error:

> 1. The trial court abused its discretion when it allowed prejudicial evidence to be admitted at trial over the defendant's objection.

---

[1] Petitioner was sentenced to a concurrent five (5) to twenty-five (25) year prison term for the rape offense charged in Count Four. (*See* Doc. 7, Ex. 26).

[2] A "Nunc Pro Tunc" amended "Judgment Entry of Sentence" was filed on July 16, 2012 to correct a clerical error in the original entry regarding the date of the sentencing hearing. (*See* Doc. 7, Ex. 28).

A. The trial court abused its discretion when it allowed Cynthia Hackworth-Rogers [to] testify about an incident that took place several years before the relevant time period.

B. The trial court abused its discretion when it allowed David Lovejoy [to] testify about an incident where [D.L.] showed him pornography that she had found in Mr. Boles's automobile.

C. The trial court abused its discretion when it permitted [the State's expert witness] Dr. Bassman to testify that children who have been "groomed" may delay reporting sexual abuse.

2. The verdict is against the manifest weight of the evidence and there as insufficient evidence to sustain a conviction.

(*Id.*, Ex. 30). On November 25, 2013, the Ohio Court of Appeals overruled the assignments of error and affirmed the trial court's judgment. (*Id.*, Exs. 32-33).

Petitioner's appellate counsel next filed a timely notice of appeal to the Ohio Supreme Court. (*Id.*, Ex. 34). In the memorandum in support of jurisdiction filed by counsel on petitioner's behalf, petitioner asserted the following propositions of law:

1. A trial court commits prejudicial error when it allows a witness to testify about pornography that the alleged victim showed to him outside the presence of the defendant in a child rape case absent evidence that the defendant was present or awar[e].

2. A trial court commits prejudicial error when it allows a witness to testify about contact between a defendant and an alleged victim that she perceived to be inappropriate in a child rape case when that contact was tickling and took place several years before any alleged criminal conduct took place.

(*Id.*, Ex. 35). On April 23, 2014, the Ohio Supreme Court declined to accept jurisdiction of the appeal. (*Id.*, Ex. 36).

### State Proceedings On Application To Reopen The Appeal

On December 18, 2014, eight months after the Ohio Supreme Court declined to accept

3

jurisdiction of petitioner's appeal from the Ohio Court of Appeals' direct appeal decision,

petitioner filed an application with the Ohio Court of Appeals, Twelfth Appellate District,

requesting that his appeal be reopened. (Doc. 7, Ex. 37). Assisted by new counsel, petitioner

alleged in the application filed pursuant to Ohio R. App. P. 26(B) that his attorney on direct

appeal was ineffective for failing to raise the following claims as assignments of error on direct

appeal:

1.   Appellant's rights guaranteed by the Sixth and Fourteenth Amendments to
     the United States Constitution were violated because Appellant received the
     ineffective assistance of counsel at trial by counsel's failure to challenge the
     statute of limitations applicable to the counts of conviction.

2.   Appellant's rights guaranteed by the Sixth and Fourteenth Amendments to the
     United States Constitution were violated because Appellant received the
     ineffective assistance of counsel at trial by counsel's failure to challenge the
     *ex post facto* effect of the change in the statute of limitations.

3.   Appellant's rights guaranteed by the Sixth and Fourteenth Amendments to the
     United States Constitution were violated because Appellant received the
     ineffective assistance of counsel at trial by counsel's failure to conduct a
     reasonable investigation and to prepare a crucial witness for trial.

4.   Appellant's rights guaranteed by the Sixth and Fourteenth Amendments to the
     United States Constitution were violated because Appellant received the
     ineffective assistance of counsel at trial by counsel's failure to object to the
     use of Dr. Stuart Bassman as an expert witness by the State of Ohio.

5.   Appellant's rights guaranteed by the Sixth and Fourteenth Amendments to the
     United States Constitution were violated because Appellant received the
     ineffective assistance of counsel at trial by counsel's failure to object to the
     instruction from the court that the jury had to accept Dr. Bassman's testimony.

(*Id.*, at PAGEID#: 316, 319, 320, 322, 323). Petitioner also argued as "good cause for the

untimely filing" of the reopening application that his appellate counsel "failed to return phone

calls, is currently under suspension by the Supreme Court of Ohio[,] was under investigation by

the Dayton Bar Association throughout the period he represented [petitioner] on direct appeal,

has closed his private practice and is believed to be currently working for a corporation[,] and

has abandoned at least one other client . . . currently pending sentencing in the United States

District Court for the Southern District of Ohio." (*Id.*, at PAGEID#: 316-17). Petitioner

attached the following exhibits to his application: (1) the affidavit of attorney Lawrence J.

Gregor, who was retained to represent petitioner after petitioner's appellate counsel "refused to

return phone calls" and is also representing petitioner in the instant habeas action; and (2) the

affidavit of Jim Evans, a friend of petitioner and the victim's father who claimed he had a

"lifetime of information about" the family and "could have been a crucial witness for [petitioner]

on the timeline of the events." (*See id.*, at PAGEID#: 325-31).

On March 11, 2015, the Ohio Court of Appeals denied petitioner's reopening application

on the ground that it was untimely. (*Id.*, Ex. 39). In so ruling, the court found that petitioner's

"good cause" argument lacked merit because under Ohio case-law, "it is well-established that

lack of communication with appellate counsel does not amount to good cause for purposes of

App.R. 26." (*Id.*, at PAGEID#: 342).

Petitioner had not initiated an appeal to the Ohio Supreme Court by the time the

respondent filed the motion to dismiss in the instant action on April 15, 2015. However, a

review of the Ohio Supreme Court's online docket records reveals that soon thereafter, on April

23, 2015, attorney Gregor filed a notice of appeal and memorandum in support of jurisdiction on

petitioner's behalf with the Ohio Supreme Court. (*See also* Doc. 9, Ex. 1). In the case numbered

2015-0650, petitioner alleged as the sole proposition of law that "[a]bandonment of a client by

counsel constitutes good cause pursuant to App.R. 26(B) for reopening of a direct appeal." On

5

July 8, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal.

## Federal Habeas Corpus Petition

On November 25, 2014, *before* the state reopening proceedings commenced, attorney Gregor filed the instant petition for federal habeas corpus relief on petitioner's behalf.  (*See* Doc. 1).   In the petition, petitioner alleges eleven grounds for relief.[3]  In Grounds Ten and Eleven, petitioner asserts the same claims that were presented as assignments of error on direct appeal to the Ohio Court of Appeals.  (*See id.*, at PAGEID#: 32-35; *see also* Doc. 7, Ex. 30).  In Grounds One through Three and Five through Six, he presents the same ineffective-assistance-of-trial-counsel claims that he contended in his state reopening application should have been raised on direct appeal; and in Ground Seven, he asserts the same ineffective-assistance-of-appellate-counsel claim that was presented in his state reopening application stemming from counsel's failure to raise the claims alleged in Grounds One through Three and Five through Six on direct appeal.  (Doc. 1, at PAGEID#: 6-30; *see also* Doc. 7, Ex. 37).  In Ground Four, petitioner claims that his appellate counsel was also ineffective for failing to inform him "about the existence of post-conviction relief, the fact that post-conviction and direct appeal ran at the same time or the limitations of a direct appeal to those matters contained in the trial record and that if Petitioner had any complaints about the ineffective assistance of his trial counsel . . . post conviction was the avenue to redress those wrongs."  (Doc. 1, at PAGEID#: 18-19).  In Ground Eight, petitioner further claims that his appellate counsel was ineffective for filing "a brief that consisted of fourteen total pages, six pages of facts and six pages of 'argument,' two assignments of error, relying on case law that had been overruled and eviscerated, with material misstatements,

---

[3] Although petitioner has listed twelve grounds for relief in his petition, he actually has presented only eleven claims as there is no "Ground Nine."

6

seeking a reversal for 'Mr. Cartwright,' which was prepared during the period that appellate

counsel was under investigation by the Dayton Bar Association for multiple violations of

Professional Conduct." (*Id.*, at PAGEID#: 30-31). Finally, in Ground Twelve, petitioner alleges

that his "sentence is void or voidable because the State of Ohio failed to provide him with a

constitutionally meaningful, adequate and effective appellate review" of his ineffective-

assistance-of-appellate-counsel claims. (*Id.*, at PAGEID#: 35-36).

    Respondent responded to the petition by filing a motion to dismiss on the ground that

petitioner has "failed to exhaust one of his claims of ineffective assistance of trial counsel and all

of his claims of ineffective assistance of appellate counsel" in the state courts. (*See* Doc. 8, p.

14, at PAGEID#: 1307). Respondent contended that the claim in Ground Three based on trial

counsel's alleged failure "to conduct a reasonable investigation and to prepare crucial witnesses

for trial" was subject to dismissal on exhaustion grounds because the claim relies on evidence

outside the record and, thus, could still be raised in the state courts by way of a delayed petition

for post-conviction relief. (*Id.*, pp. 14-16, at PAGEID#: 1307-09). Respondent argued that

petitioner's ineffective-assistance-of-appellate-counsel claims were also unexhausted because at

that time petitioner could still pursue a timely appeal to the Ohio Supreme Court from the Ohio

Court of Appeals' March 11, 2015 denial of his reopening application. (*Id.*, pp. 16-17, at

PAGEID#: 1309-10).

    In the pleading filed in response to the motion to dismiss, petitioner conceded that the

instant petition is a "mixed" petition containing both exhausted and unexhausted claims. (*See*

Doc. 9, p. 1, at PAGEID#: 1313). However, petitioner contended the case should be stayed

rather than dismissed while he pursues the remaining avenues of relief in the state courts. (*Id.*,

pp. 4-5, at PAGEID#: 1316-17).  Petitioner stated that he had already perfected an appeal of the

Ohio Court of Appeals' reopening decision to the Ohio Supreme Court in the case numbered 15-

0650.  (*Id.*, p. 4, at PAGEID#: 1316).  He also filed a notice informing the Court that he had filed

a petition for post-conviction relief with the Brown County Court of Common Pleas on May 22,

2015.  (Doc. 10).  Respondent has filed a pleading opposing petitioner's request to stay the case.

(Doc. 11).

## II.  OPINION

As a threshold matter, upon review of the record and the Ohio Supreme Court's online

docket record for Case No. 15-0650, it is clear that the ineffective-assistance-of-appellate

counsel claims raised by petitioner in his reopening application, which were unexhausted at the

time respondent filed the motion to dismiss and petitioner filed the motion to stay, have been

exhausted in the state courts.  The Ohio Supreme Court issued the final ruling in the state

reopening matter on July 18, 2015.  Therefore, respondent's motion to dismiss and petitioner's

motion to stay (Docs. 8, 9) are **DENIED** as moot to the extent they pertain to those now

exhausted claims.

Because the state reopening proceedings have concluded, only the ineffective-assistance-

of-trial-counsel claim alleged in Ground Three of the petition arguably poses an exhaustion issue

at this juncture.  Neither party has provided an update about the status of the post-conviction

petition that was filed with the Brown County Common Pleas Court in May 2015, and the state

court record has not been made available online.  Therefore, in the absence of any evidence to

the contrary, the undersigned will assume that the matter is still pending before the state courts

and, therefore, the claim is unexhausted.

The statute governing habeas petitions filed by state prisoners contains an exhaustion requirement. *See* 28 U.S.C. § 2254(b)-(c). Specifically, the statute provides that an application for a writ of habeas corpus by a state prisoner shall not be granted unless the petitioner has exhausted his state court remedies, there is an absence of available state corrective process, or circumstances exist that render such process ineffective to protect petitioner's rights. 28 U.S.C. § 2254(b)(1). A state defendant with federal constitutional claims is required to first fairly present those claims to the state courts for consideration because of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts. *See Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). Under the "fair presentation" requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," which, in Ohio, includes discretionary review by the Ohio Supreme Court. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 842 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985).

If the petitioner fails to fairly present his claims through the requisite levels of state appellate review, but still has an avenue open to him in the state courts by which he may present the claims, his petition is subject to dismissal without prejudice for failure to exhaust state remedies. *See* 28 U.S.C. § 2254(c). Although the exhaustion requirement is not jurisdictional, and an application for writ of habeas corpus may be denied on the merits notwithstanding the petitioner's failure to exhaust, *see* 28 U.S.C. § 2254(b)(2), there is a strong presumption in favor of requiring the exhaustion of state remedies. *See Granberry v. Greer,* 481 U.S. 129, 131

(1987). A "mixed" petition containing both unexhausted claims and claims that have been fairly

presented to the state courts is subject to dismissal without prejudice on exhaustion grounds.

*Rose v. Lundy,* 455 U.S. 509, 510, 522 (1982).

Since the enactment in 1996 of the Antiterrorism and Effective Death Penalty Act

(AEDPA), which "preserved *Lundy*'s total exhaustion requirement," but also imposed a one-year

statute of limitations on the filing of federal habeas petitions, *Rhines v. Weber,* 544 U.S. 269, 275

(2005), some federal courts (including the Sixth Circuit) have adopted a "stay-and-abeyance"

procedure to ensure habeas review is not precluded in the class of cases where a timely-filed

federal habeas petition is dismissed on exhaustion grounds and petitioner subsequently returns to

federal court to present his claims in a renewed petition after exhausting his state remedies only

to find that his claims are barred from review by the one-year statute of limitations set forth in 28

U.S.C. § 2244(d)(1). *See, e.g., Griffin v. Rogers,* 308 F.3d 647, 652 & n.1 (6th Cir. 2002);

*Palmer v. Carlton,* 276 F.3d 777, 778-81 (6th Cir. 2002).

In *Rhines,* 544 U.S. at 276, the Supreme Court affirmed that district courts have the

discretion to issue stays in habeas cases, but that such discretion is circumscribed to the extent it

must "be compatible with AEDPA's purposes." The Court pointed out that one of the AEDPA's

purposes is to "reduce delays in the execution of state and federal criminal sentences" based on

the "well-recognized interest in the finality of state judgments." *Id.* (quoting *Woodford v.*

*Garceau,* 538 U.S. 202, 206 (2003), and *Duncan v. Walker,* 533 U.S. 167, 179 (2001)). In

addition, the AEDPA's statute of limitations tolling provision was intended to "reinforce[] the

importance of *Lundy*'s "simple and clear instruction to potential litigants: before you bring any

claims in federal court, be sure that you first have taken each one to state court." *Id.* at 276-77

10

(quoting *Lundy,* 455 U.S. at 520).

> The Court went on to determine that:
>
> Stay and abeyance, if employed too frequently, has the potential to undermine these twin purposes. Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition. . . .
>
> For these reasons, stay and abeyance should be available only in limited circumstances.

*Id.* at 277.

The Court held that stay and abeyance "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court," and that, "even if a petitioner had good cause for that failure," it would be an abuse of discretion for the court to grant a stay where the unexhausted claims "are plainly meritless" or the "petitioner engages in abusive litigation tactics or intentional delay." *Id.* at 277-78. However, on the other hand, "it likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278.

In the absence of clear guidance from the Supreme Court, the federal courts have differed as to what constitutes "good cause" within the meaning of *Rhines*. *See, e.g., Williams v. Hurley,* No. 2:05cv985, 2006 WL 1650771, at *10-11 (S.D. Ohio June 6, 2006) (Report & Recommendation) (King, M.J.) (discussing the split in authority as to whether "cause standard of *Rhines* requires a lesser showing than that for procedural default" and whether ineffective

11

assistance of counsel during state post-conviction proceedings may constitute "good cause for failure to exhaust claims in state proceedings"), *adopted,* 2006 WL 1804550 (S.D. Ohio June 28, 2006) (Holschuh, J.); *see also Huge v. Warden, Lebanon Corr. Inst.,* No. 1:15cv61, 2015 WL 4555494, at *3-4 (S.D. Ohio July 28, 2015) (Litkovitz, M.J.), *adopted*, 2015 WL 5117946 (S.D. Ohio Sept. 1, 2015) (Barrett, J.); *Tolliver v. Sheets,* No. 2:05cv1161, 2007 WL 2462650, at *17-18 (S.D. Ohio Aug. 27, 2007) (Smith, J.; King, M.J.).

In *Pace v. DiGuglielmo,* 544 U.S. 408, 416 (2005), the Supreme Court stated that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file" a petition containing unexhausted claims in the federal court. Some courts have concluded that this statement in *Pace* supports a more expansive definition of good cause. *See, e.g., Tullis v. Kontah,* No. 2:06cv1025, 2007 WL 915197, at *5-6 (S.D. Ohio Mar. 26, 2007) (Graham, J.; King, M.J.) (citing Ninth Circuit decision in *Jackson v. Roe,* 425 F.3d 654, 661-62 (9th Cir. 2005), and *Baker v. Horn,* 383 F. Supp.2d 720, 747 (E.D. Pa. 2005)); *see also Hnatiuk v. Trombley,* No. 06-13880, 2008 WL 3305157, at *4 (E.D. Mich. Aug. 11, 2008) (quoting *Rhines v. Weber,* 408 F. Supp.2d 844, 849 (D.S.D. 2005) (on remand from Supreme Court's decision in *Rhines*)); *see also Huge, supra,* 2015 WL 4555494, at *4. In *Tullis,* after detailing the "broad and varied" split in authority, the Court concluded with the following quotation from *Riner v. Crawford,* 415 F. Supp.2d 1207, 1209-11 (D. Nev. 2006):

> [T]he discussions by the Pennsylvania court in *Baker* and the Ninth Circuit in *Jackson* support . . . [the] conclusion that the good cause standard applicable in consideration of a request for stay and abeyance of a federal habeas petition requires the petitioner to show that he was prevented from raising the claim, either by his own ignorance or confusion about the law or the status of his case, or by circumstances over which he had little or no control, such as the actions of

counsel either in contravention of the petitioner's clearly expressed desire to raise
the claim or when petitioner had no knowledge of the claim's existence.

*Tullis, supra,* 2007 WL 915197, at *6.

In this case, respondent contends that the case should be dismissed rather than stayed
because petitioner has not demonstrated good cause for his failure to properly exhaust the
ineffective-assistance-of-trial-counsel claim alleged in Ground Three by way of a petition for
state post-conviction relief. (*See* Doc. 11, p. 2, at PAGEID#: 1326). Respondent argues that
although petitioner has alleged that his counsel on direct appeal was ineffective and non-
responsive and failed to inform him of his post-conviction remedies, he has not provided any
explanation as to why his current counsel, who included the claim in the reopening application
filed in December 2014, failed to properly assert it in a state post-conviction petition until May
2015. (*Id.*).

However, it appears from the present record that petitioner has not engaged in abusive
litigation tactics or intentional delay in bringing the ineffective-assistance-of-trial-counsel claim
to the state courts' attention. Instead, it appears that petitioner and his current counsel were
confused about the best way to pursue the claim in the state courts particularly given the limited
exception set forth in Ohio Rev. Code § 2953.23 that would have permitted consideration of a
post-conviction petition submitted after the deadline for filing a timely petition had expired. The
undersigned is reluctant to hold petitioner to a strict standard simply because he is represented by
counsel who arguably should have known that to the extent the claim relies on evidence outside
the record, a delayed post-conviction petition was the proper remedy to pursue rather than a
delayed application to reopen the direct appeal. At this point in the proceedings, the Court

13

cannot conclude that the unexhausted claim is plainly meritless. Furthermore, if the Court were to dismiss the petition without prejudice instead of staying the case, any subsequent petition filed by petitioner may be subject to dismissal on statute of limitations grounds.

Accordingly, in sum, after weighing the *Rhines* factors, for good cause shown, and out of concern that the dismissal of the petition at this juncture might unreasonably impair future federal review of any of petitioner's grounds for habeas corpus relief, it is **RECOMMENDED** that respondent's motion to dismiss (Doc. 8) be **DENIED**, and petitioner's motion to stay (Doc. 9) be **GRANTED** to the extent that the ineffective-assistance-of-trial-counsel claim alleged in Ground Three of the petition is still pending in state post-conviction proceedings initiated in May 2015 and is, therefore, unexhausted. The instant proceedings should be **STAYED** while petitioner is afforded the opportunity to fully exhaust his state court remedies. To ensure that judicial and administrative resources are conserved, it is **FURTHER RECOMMENDED** that the stay take the form of an administrative stay and that the case be terminated on the Court's active docket.

## IT IS THEREFORE ORDERED THAT:

Respondent's motion to dismiss the petition and petitioner's motion to stay the case (Docs. 8, 9) are **DENIED** as moot to the extent those motions pertain to petitioner's ineffective-assistance-of-appellate-counsel claims, which have since been exhausted in state reopening proceedings that concluded in July 2015.

## IT IS THEREFORE RECOMMENDED THAT:

1. Respondent's motion to dismiss (Doc. 8) be **DENIED** and petitioner's motion to stay the case (Doc. 9) be **GRANTED** to the extent that the ineffective-assistance-of-trial-counsel

14

claim alleged in Ground Three of the petition is unexhausted because it is still pending before the state courts in post-conviction proceedings that were initiated by petitioner in May 2015.  The instant petition (Doc. 1) should be administratively **STAYED** and **TERMINATED** on the Court's active docket pending petitioner's exhaustion of the Ohio post-conviction remedy. The stay should be conditioned on petitioner's filing a motion to reinstate the case on this Court's active docket within thirty (30) days after fully exhausting the state post-conviction avenue of relief through the requisite levels of appellate review.  Petitioner should be granted leave to reinstate the case on the Court's active docket when he has exhausted the claim in the state courts based on a showing that he has complied with the conditions of the stay.


Date: _12/7/15_

Karen L. Litkovitz
United States Magistrate Judge

15

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

PATRICK BOLES,
    Petitioner,

                  Case No. 1:14-cv-903


                  Beckwith, J.
  vs.               Litkovitz, M.J.


WARDEN, CHILLICOTHE
CORRECTIONAL INSTITUTION,
    Respondent.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140

16